IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Gino Bassett, Sr. (K55476), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 50126 |
| v. | ) | |
| | ) | Hon. Iain D. Johnston |
| C/O Righteous, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's complaint may proceed consistent with this order. The Court directs the Clerk of Court to: (1) file the complaint [19]; (2) issue summonses for service of the complaint on Defendants Righteous, Gallegoes, Trump, Dalke, Heslop, Silva, and Love; (3) send Plaintiff seven blank USM-285 service forms, instructions for completing this form, and a copy of this order; and (4) send the U.S. Marshals Service a copy of this order. Because Plaintiff is not proceeding *in forma pauperis* and has not demonstrated that he is unable to pay a service fee, he is not entitled to service at government expense. *See* Fed. R. Civ. P. 4(c)(3). Plaintiff therefore is responsible for having the summonses and complaint served on Defendants Righteous, Gallegoes, Trump, Dalke, Heslop, Silva, and Love. To effectuate service of process he may employ the U.S. Marshals Service or use any other method permitted by Federal Rule of Civil Procedure 4. If Plaintiff employs the Marshals Service, he must: (1) submit to the Marshals Service a deposit of $65.00 for each Defendant and (2) submit to the Clerk of Court a completed USM-285 service form for each Defendant. Payment can be made by cashier's check, certified check, or money order payable to "US Marshals Service" and mailed to 219 S. Dearborn Street, Ste 1168 / Attn: Civil Division, Chicago, IL 60604. Plaintiff must write the case number on the check or envelope. For efficiency, the Court appoints the Marshal to serve Defendants Righteous, Gallegoes, Trump, Dalke, Heslop, Silva, and Love but notes that the Marshal will take no action until the deposit is paid for each Defendant and the USM-285 service form is received for each Defendant. Plaintiff must file a status report with this Court by March 31, 2025, indicating how he intends to accomplish service and should be aware that failure to serve Defendants within 90 days of the entry of this order may result in dismissal of that Defendant or of the case in its entirety. *See* Fed. R. Civ. P. 4(m). Plaintiff also must promptly update his address if it changes while this case is open. If he does not keep the Court informed of his address, this lawsuit may be dismissed with no further notice. Plaintiff's motions for counsel [4] [14] [22] are denied without prejudice to refiling at a later date consistent with this order.

## STATEMENT

Plaintiff Gino Bassett, Sr. brings this *pro se* civil rights action under 42 U.S.C. § 1983 alleging Defendants engaged in unconstitutional use of force against him on Septemeber 22, 2022,

while Plaintiff was incarcerated at Dixon Correctional Center. Plaintiff has paid the filing fee associated with this lawsuit (Dkt. 27) and Plaintiff's complaint is now before the Court for initial review.[1]

Because Plaintiff seeks relief from a government entity, or employee of a government entity, the Court is required to screen his complaint and dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. *See* 28 U.S.C. § 1915A; *Jones v. Bock,* 549 U.S. 199, 214 (2007). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain enough facts, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor." *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020).

Plaintiff alleges the following events in support of his claims: On September 22, 2022, Plaintiff was in his cell when Officer Righteous came over with Dr. Susanjar to talk with him.[2] Dkt. 19, pg. 3. Officer Righteous instructed Plaintiff to stay on his bed during the interview with the cell door open, which is not standard protocol. *Id.* Plaintiff explained to Dr. Susanjar that his TV was broken, certain papers of his had been torn in half (including Plaintiff's legal documents and his younger sister's obituary), and some of his property was missing. *Id.* Plaintiff got up to turn the TV on – to show that it was broken – and reached to give Dr. Susanjar the torn copy of his sister's obituary. *Id.* At that point, Officer Righteous grabbed his pepper spray can and sprayed Plaintiff in the face and chest while knocking him to the floor. *Id.* Officer Gallegoes then ran into the cell and the two officers continued to spray, kick, and stomp Plaintiff while putting on restraints. *Id.* After Plaintiff had already been restrained, four other (unidentified) officers[3] ran into his cell and started spraying, stomping, and kicking Plaintiff. *Id.* The officers pulled his sweatpants down and sprayed his lower body from the waist down, while Officer Righteous and Officer Gallegoes continued to strike Plaintiff in the face and head with closed fists. *Id.*

Plaintiff was then dragged to another wing where his was put in a shower and stripped naked. *Id.* Sergeant Trump sprayed the inside of a jumpsuit with pepper spray and told Plaintiff to

---

[1] Plaintiff has submitted multiple versions of his complaint. *See* Dkt. 1, Dkt. 11 / Dkt. 15 (filed in two parts), and Dkt. 19. For purposes of screening under 28 U.S.C. § 1915A, the Court has reviewed the most recent version.

[2] Plaintiff refers to Dr. Susanjar as his "phyc" doctor, which the Court understands to mean that Dr. Susanjar was visiting with Plaintiff for purposes of providing mental health care.

[3] Plaintiff alleges that all six responding officers beat, stomped, and pepper sprayed him at a time when he was already restrained and in compliance. Dkt. 19, pg. 3. Plaintiff has named Officer Heslop, Officer Silva, and Lieutenant Love as Defendants in the case and the Court understands from the 9/22/22 Incident Report (attached as an exhibit to Plaintiff's complaint) that these individuals were responding officers on the day in question. *See* Dkt. 19, pg. 10.

put it on, which he did, causing burns to his skin, testicles, face and buttocks. *Id.*, pgs. 4-5. Plaintiff was then taken to a different room to talk to Internal Affairs, where they took pictures of Plaintiff's injuries. *Id.*, pg. 4. After Internal Affairs left, Officer Dalke and two other TACT officers walked into the room. *Id.* Officer Dalke spoke to Plaintiff, saying that Officer Righteous "didn't break [his] TV," then struck Plaintiff in the face with a closed fist, slamming his face against the wall. *Id.* Plaintiff was then dragged to another cell where he waited to be transported to Pontiac Correctional Center. *Id.*, pg. 5.

Plaintiff brings claims against Officer Righteous, Officer Gallegoes, Sergeant Trump, Officer Dalke, Officer Heslop, Officer Silva, and Lieutenant Love alleging unconstitutional use of force in violation of the Eighth Amendment. In addition to monetary damages, Plaintiff requests "[to be] able to file excessive force charges against all Defendant[s]." Dkt. 19, pg. 6.[4]

Plaintiff has stated a plausible right to relief against Defendants Righteous, Gallegoes, Trump, Dalke, Heslop, Silva, and Love based on their alleged uses of force on September 22, 2022. The Eighth Amendment's ban on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." *Jones v. Anderson*, 116 F.4th 669, 677 (7th Cir. 2024) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). In situations where prison officials are attempting to resolve a disturbance, the central question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Relevant factors include "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Id.* (quoting *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004)). "Infliction of pain that is totally without penological justification is *per se* malicious." *Fillmore*, 358 F.3d at 504 (citation omitted). As with other uses of force, use of pepper spray is analyzed under the Eighth Amendment. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."); *see also Lee v. James*, No. 21-1114, 2021 WL 3197514, at *3 (7th Cir. July 29, 2021) (unpublished) ("No reasonable guard would think using such force [a single burst of pepper spray] on a docile and restrained inmate was justified."). Based on the allegations in his complaint, Plaintiff has described multiple uses of force that were used against him after he was restrained and complying with orders. While further development of the record may provide additional details regarding an ongoing need to maintain or restore discipline, Plaintiff's allegations are sufficient to state a plausible right to relief against all seven Defendants at the pleading stage.

Defendants therefore must respond to Plaintiff's complaint. Nothing in this order precludes any available defenses, but Defendants should keep in mind that the Court cannot reach the merits of Plaintiff's claims without fact development that is not appropriate at this time. *See Schillinger*, 954 F.3d at 993-94 (explaining that courts screen prisoners' complaints using the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)).

---

[4] It appears Plaintiff wishes to pursue criminal charges against Defendants; however, this type of relief is not an available remedy under Section 1983.

The Court directs the Clerk of Court to issue summonses for service of the complaint on Defendants Righteous, Gallegoes, Trump, Dalke, Heslop, Silva, and Love and to send Plaintiff seven blank USM-285 (Marshals Service) forms. Because Plaintiff has not demonstrated that he is unable to pay a service fee, he is not entitled to service at government expense. *See* Fed. R. Civ. P. 4(c)(3). Plaintiff therefore is responsible for having the summonses and complaint served on Defendants Righteous, Gallegoes, Trump, Dalke, Heslop, Silva, and Love within 90 days. Fed. R. Civ. P. 4(m). Plaintiff should refer to the Order section above for further instruction.

For the sake of efficiency, the Court appoints the U.S. Marshal to effect service of process (assuming that Plaintiff chooses this option, pays the appropriate deposit, and returns the required USM-285 service forms). The deposit must be sent to the address set forth above and must include this case number. Plaintiff's failure to effect service by the deadline set in Fed. R. Civ. P. 4(m) may result in dismissal of Plaintiff's claims against that Defendant, or of this case in its entirety.

Should Plaintiff engage the services of the Marshal, the Court directs the Marshal to make all reasonable efforts to serve Defendants Righteous, Gallegoes, Trump, Dalke, Heslop, Silva, and Love. With respect to any former employee who can no longer be found at the work address provided by Plaintiff, officials with the Illinois Department of Corrections must furnish the Marshal with the Defendant's last-known address. The Marshal will use the information only for purposes of effectuating service or to show proof of service, and any documentation of the address shall be retained only by the Marshals Service. Address information will not be maintained in the Court file nor disclosed by the Marshal, except as necessary to serve Defendants. The Court authorizes the Marshal to send requests for waivers of service consistent with Federal Rule of Civil Procedure 4(d) before attempting personal service.

The Court instructs Plaintiff to file all future papers concerning this action with the Clerk of this Court in care of the Prisoner Correspondent. Every document submitted by Plaintiff must include a certificate of service indicating the date on which he gave the document to jail or prison authorities for mailing. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to Plaintiff. Plaintiff is advised that he must promptly update his address if it changes while this case is open. If he does not keep the Court informed of his address, this lawsuit may be dismissed with no further notice. Plaintiff should keep a copy of all documents he submits to this Court.

*Plaintiff's Motions for Attorney Representation*:

There is no right to court-appointed counsel in federal civil cases, but the Court may recruit a lawyer to represent an indigent litigant on a *pro bono* basis. *Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022); *see also* 28 U.S.C. § 1915(e)(1). In deciding whether to recruit counsel, the Court must engage in a two-step analysis: (1) has the plaintiff made a reasonable attempt to retain counsel on his own or been effectively precluded from doing so; and, if so, (2) given the factual and legal complexity of the case, does the plaintiff appear competent to litigate the matter himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc).

Plaintiff's motions for attorney representation demonstrate that he has attempted to retain counsel on his own and, so far, has not been successful in finding an attorney to take his case. *See* Dkt. 4, Dkt. 14, Dkt. 22. Nonetheless, the recruitment of counsel is not warranted at this time. This case is in its early stages and is not legally or factually complex, as Plaintiff has personal knowledge of all facts relevant to his claims. All that is required of Plaintiff at this point in the case is that he complete and return one USM-285 form for each Defendant and pay the deposit (or otherwise serve Defendants without assistance from the U.S. Marshal), a task which does not appear to be beyond Plaintiff's capabilities. *See also Pickett v. Chi. Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019) (observing that a motion for attorney representation may be filed "so early in the case that it [i]s impossible to tell whether [the plaintiff] could represent himself adequately"). The Court also notes that it grants *pro se* litigants wide latitude in the handling of their lawsuits, and it will do so here.

Accordingly, Plaintiff's motions for attorney representation are denied without prejudice. If the case proceeds to a point where the need for counsel is more pressing, Plaintiff may renew his request for attorney representation and the Court will consider the request at that time.

Date: February 19, 2025    By: _____
Iain D. Johnston
United States District Judge